.IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| DEBORAH PILLEY AKA PILLEY BIANCHI DBA THE CHASER INITIATIVE AND ROBIN PILLEY, PLAINTIFFS, | ) ) ) ) | C.A. NO. 7:25-cv-13026-DCC |
| vs. | ) ) ) | **DEFENDANT SPARTANBURG COMMUNITY COLLEGE FOUNDATION, INC.'S RULE 12(b)(1)** |
| MICHAEL MIKOTA AND SPARTANBURG COMMUNITY COLLEGE FOUNDATION, INC., | ) ) ) | **AND 12(b)(6) MOTION TO DISMISS THE AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT** |
| DEFENDANTS. | ) ) ) | |

## <u>INTRODUCTION</u>

Defendant Spartanburg Community College Foundation, Inc. (the "Foundation") submits this Memorandum of Law in Support of its Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss the Amended Complaint, dated January 7, 2026 ("Amended Complaint"). (ECF 17). Plaintiffs Deborah Pilley a/k/a Pilley Bianchi d/b/a The Chaser Initiative and Robin Pilley ("Plaintiffs") seek damages and injunctive relief against the Foundation and Michael Mikota ("Mikota"), the President of Spartanburg Community College, for alleged copyright and trademark infringement on the "Chaser" mark. The claims against the Foundation fail simply because they have no factual or legal basis. Moreover, lacking a basis for their claims against the Foundation, Plaintiff attacks a straw man: the Amended Complaint is replete with references to Spartanburg Community College ("SCC"). ***But SCC is not a defendant and has not been held liable for any infringement***. Plaintiffs voluntarily withdrew their original Complaint against SCC. (ECF 1, 16). Prior to stating the causes of action, Plaintiffs' Amended Complaint contains a ***single*** allegation against the Foundation—identifying it as a non-profit and party. (ECF 17, ¶7). The Amended

1

Complaint contains little factual detail relative to the Foundation and no detail to support a claim. Accordingly, the Court should dismiss the Amended Complaint with prejudice.

## I.     BACKGROUND

### A.  Factual Background as Alleged in the Amended Complaint

Generally, Plaintiffs allege that they own various marks and copyrights related to a now-deceased dog named Chaser. (ECF 17, generally). Plaintiffs allege SCC used "Chaser" as its mascot and used images and logos derived from three photographs provided by Plaintiff Bianchi pursuant to an alleged verbal license entered into between September and December 2020. (*Id.* ¶42, 53). While Plaintiff alleges, in conclusory fashion, that a verbal license existed, Plaintiffs fail to even recite the elements of a valid license. (*Id.*, generally). The Amended Complaint refers to a few photographs of the dog Chaser. (*Id.*, ¶¶ 34-35.) Plaintiffs allege that only one of the photographs was copyrighted – on June 29, 2025, almost five years after Plaintiffs provided the photograph to SCC and SCC started using images and logos allegedly derived from that photograph. SCC's marks are stylized, cartoonish images of *a dog*. (*Id.* ¶¶ 35, 58). SCC's marks do not resemble a specific dog; some might say the marks do not resemble a specific breed.

Plaintiffs allege that in October 2024, Mikota sent a proposed written license agreement. (ECF ¶¶ 56-60). Bianchi allegedly entered into negotiations with SCC regarding the license agreement and learned that SCC was using the Chaser marks inconsistently with the alleged verbal license. (*Id.* ¶¶63-64.) Plaintiffs failed to explain how the use was allegedly "in addition to and/or inconsistent with" the purported verbal license. (*Id.*) Plaintiffs requested SCC to cease the alleged unapproved use, but SCC continued to use the marks. (*Id.* ¶65). Plaintiffs allegedly terminated the verbal license. (ECF 17 ¶66). SCC continues to use the Chaser/Chasers marks. (*Id.* ¶ 68).

As relevant to the Foundation, Plaintiffs allege the Foundation:

(i)     "is a non-profit organization organized and existing under the laws of South Carolina and having and address at …Spartanburg, South Carolina."

(ii)    "had the right to direct, control, or supervise SCC's actions."

(iii)   "…[t]hrough its simultaneous involvement, approval, direction and control of SCC with respect to its actions involving the Chaser Materials, the Foundations served as another driving force behind SCC's infringement. The Foundation provided consent and resources needed by SCC to carry out Mikota's idea and commit the infringement of the Chaser Photo."

(iv)    "direct[ed], control[ed], supervis[ed], and participat[ed] in SCC's infringing activities, [and thereby] the Foundation both induced SCC to infringe Bianchi's copyrights and materially contributed to the infringement by providing the necessary consent, direction, and resources to carry out the infringement benefited financially from SCC's alleged infringement."

(v)     "had an obvious and direct financial interest in the alleged infringing activities, including those of SCC."

(vi)    "revenues and profits are tied to the financial performance of SCC and or public notoriety of SCC. . ."

(vii)   "…knew that SCC's infringing use… would improve notoriety of, public recognition of and/or the financial performance of SCC, which would in turn financially benefit … the Foundation."

(ECF 17, ¶¶ 16, 92-95, 97-98). The conclusory allegations listed, *supra*, and the cause of action for indirect copyright infringement via vicarious and contributory infringement are repackaged and tailored to the cause of action for false designation of origin and cause of action for common law trademark infringement. (*Id.* ¶¶ 111, 118-121, 141, 143). The Amended Complaint is bereft of supporting details for these conclusory allegations.

Notably, the Amended Complaint contains no allegation that the Foundation was present during any of the negotiations of either the purported verbal license or written license. The

3

Amended Complaint fails to: (i) identify the relationship between SCC and the Foundation; (ii) explain what consent was given by (and why it would be necessary or could be given by) the Foundation; (iii) explain how the financial performance of SCC financially benefits the Foundation; (iv) explain how the use of the allegedly infringing marks provide (or could provide) notoriety of, public recognition of, and improve (or could improve) the financial performance of SCC; and (v) what resources the Foundation provided for SCC's use with respect to the marks. (ECF 17, generally). Most remarkably, Plaintiffs fail to explain how the Foundation directed, controlled, or supervised SCC, generally, and fail to explain how the Foundation directed, controlled, supervised, or participated (or how it could) in SCC's infringing activities. (*Id*.) Instead, the Amended Complaint makes legal and unreasonable conclusions – without any facts – with respect to the Foundation and these activities.

**B. Procedural History**

Plaintiffs filed their original Complaint on October 16, 2025, asserting claims against SCC, Mikota, and the Foundation for copyright infringement, false designation of origin, common law trademark infringement, declaratory judgment, unfair trade practices, and breach of contract accompanied by a fraudulent act. (ECF 1).

On December 17, 2025, SCC and Mikota filed a Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss the original Complaint. (ECF 13). On January 7, 2026, Plaintiffs: (i) dismissed their federal claims against SCC; (ii) filed an Amended Complaint asserting three causes of action against Mikota and the Foundation: indirect copyright infringement, false designation of origin, and common law trademark infringement; and (iii) filed an action in South Carolina Court of Common Pleas against SCC. (ECF 16, 17). Mikota filed a motion to dismiss the Amended

4

Complaint for failure to state a claim and for lack of subject matter jurisdiction[1]. (ECF 23, Exhibit 2). This motion to dismiss follows.

## II.     **LEGAL STANDARD**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When considering a Rule 12(b)(6) motion, the court must accept the allegations in the pleading as true and draw all reasonable factual inferences in favor of the party opposing the motion. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, a court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and

---

[1] The Foundation joins in the arguments contained within Mikota's Motion to Dismiss except to the extent inconsistent with the facts or arguments herein.

conclusions, and a formulaic recitation of the elements of a cause of action will not do.

550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (cleaned up). As also noted by the Supreme Court, the pleading must state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

## III.     ARGUMENT

### A.     Plaintiffs' Amended Complaint Fails to Meet the Threshold Requirements to Maintain a Case Against the Foundation

#### (i)     Plaintiffs Have Not Satisfied Rule 8

As an initial matter, Plaintiffs' claims, as pled, do not meet the pleading requirements of Rule 8. See Fed. R. Civ. P. 8. As stated above, pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) such that the defendant will have fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up) (quotations marks omitted).

Here, Plaintiffs' Amended Complaint utterly fails to set forth basic details which would give the Foundation fair notice of what grounds Plaintiffs' claims are based upon. Plaintiffs pled conclusions and attempted to recite a formulaic recitation of the causes of action (although that is a generous description of the causes of action). The Foundation does not know who did what or when. While the Amended Complaint contains some details about SCC, Plaintiffs concede SCC is not the Foundation. (Notably, Plaintiffs admit this point by: (i) bringing a claim for indirect infringement against the Foundation and (ii) dismissing their claims against SCC while maintaining them against the Foundation.) Indeed, Plaintiffs have not identified any relationship between SCC and the Foundation. Instead, Plaintiffs make legal conclusions and state conclusory

6

allegations. The Court should dismiss the Foundation with prejudice, because Plaintiffs'

Amended Complaint fails to properly allege any concrete and particularized injury traceable to

the Foundation's own conduct or redressable relief against the Foundation. "Factual allegations

must be enough to raise a right to relief above the speculative level[.]" *Souto v. Fla. Int'l Univ.*

*Found., Inc.,* 446 F. Supp. 3d 983, 988 (S.D. Fla. 2020). The Amended Complaint contains no

factual basis for its claims against the Foundation. As stated above, a well-pleaded complaint

requires, "more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action," a standard upon which the Amended Complaint fails to adhere to. *Bell Atlantic Corp.*

*v. Twombly* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Accordingly, the

Amended Complaint should be dismissed for failure to comply with Rule 8.

### (ii)    The Court Lacks Subject Matter Jurisdiction

Additionally, the Amended Complaint relies upon federal question jurisdiction conferred

by the Lanham Act. As such, if Plaintiffs' Lanham Act claim fails, the Court lacks subject matter

jurisdiction over the Foundation. However, the Amended Complaint failed to allege a factual

basis for its Lanham Act claims against the Foundation. See *Adams v. Bain,* 697 F.2d 1213, 1219

(4th Cir. 1982) (finding that 12(b)(1) attacks asserting that "a complaint simply fails to allege

facts upon which subject matter jurisdiction can be based . . . [are] afforded the same procedural

protection as . . . a Rule 12(b)(6) consideration"). As Plaintiffs failed to state facts sufficient to

maintain a Lanham Act claim against the Foundation, the Court should find that it does not have

subject matter jurisdiction over the Foundation. Further, if the Lanham Act claim fails, the court

should decline supplemental jurisdiction over any remaining state-law claims against the

Foundation. For these reasons, the Court should dismiss the Amended Complaint for lack of

subject matter jurisdiction.

### (iii)     Plaintiffs Have No Standing Against the Foundation

In addition to the lack of subject matter jurisdiction, Plaintiffs also have not established standing. To establish standing, a plaintiff must have (1) suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) fairly traceable to the challenged action of the defendant; and (3) likely to be redressed by a favorable decision. *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112. S. Ct. 2130, 119 L.Ed.2d 351 (1992); *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020). Standing is not merely a pleading requirement, but an indispensable part of the case, and must be established by evidence appropriate for every stage of the litigation. *Lujan*, 504 U.S. at 561, 118 L. Ed. 2d, 251 (1992).

"When a defendant challenges subject matter jurisdiction, the burden is on the plaintiff to prove that subject matter jurisdiction exists." *Musari v. Countrywide Home Loans*, No. PWG-15-3028, 2016 U.S. WL 4124227, at \*7 (citing *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999)). In considering a motion to dismiss for lack of subject-matter jurisdiction, "a trial court may [] go beyond the allegations of the complaint." *24th Senatorial Dist. Republican Comm. v. Alcorn,* 820 F.3d 624, 629 (4th Cir. 2016) (internal quotations and citation omitted). In such a situation, the plaintiff's allegations are not entitled to a presumption of truth. *Id.*

In this case, assuming Plaintiffs are injured (which injury is unclear, speculative, and potentially inaccurate), Plaintiffs still cannot establish the remaining *Lujan* factors as to the Foundation to establish standing. First, Plaintiffs cannot establish any causal connection between their alleged injury – damages, declaratory judgment, and injunctive relief due to indirect trademark infringement, false designation of origin or common law trademark infringement, – and the conduct complained of – alleged indirect trademark infringement, false designation of origin

and common law trademark infringement, and an injunction prohibiting further infringing conduct or contributing to SCC's infringement because the Foundation did not engage in any of the conduct that gave rise to the alleged injuries set forth in the Amended Complaint. In sum, the Amended Complaint does not explain how the Foundation caused Plaintiffs' injury. Second, any decision by this Court would not be able to give Plaintiffs the relief they seek because Plaintiffs were not harmed by the Foundation. Plaintiffs request a determination of liability, injunctive relief, and damages. However, the Foundation has not engaged in the conduct complained of and is not liable for it. Thus, Plaintiffs are not entitled to relief against the Foundation. Moreover, any relief from the Foundation would not redress Plaintiffs' injuries because the Foundation has not engaged in any conduct that may require damages or a declaratory judgment. Similarly, the Foundation has not engaged in any conduct that an injunction could redress. Simply, Plaintiffs failed to properly allege standing against the Foundation. As Plaintiffs failed to allege standing against the Foundation, the Court should dismiss the Complaint with prejudice.

**B.    The Amended Complaint Should Be Dismissed for Failure to State a Claim**

**(i)    The Court Should Dismiss the Cause of Action
for Indirect Copyright Infringement Against the Foundation**

Plaintiffs failed to allege facts to support the first cause of action against the Foundation for "Indirect Copyright Infringement via Vicarious and Contributory Infringement."[2] A prima

---

[2] Under the *Effects Associates,* [*Inc. v. Cohen*, 908 F.2d 555 (9th Cir.1990)] test, an "implied nonexclusive license" for use of an otherwise copyright protected work is created "when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee copy and distribute his work." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 514 (4th Cir. 2002) (citations omitted). Plaintiffs concede that the marks were created by an artist in the employ of SCC. (ECF 17 ¶39.) This fact runs contrary to the requirements of an implied license as the creator/licensor was SCC and/or an artist in its employ. Plaintiffs did not request the creation of the work, create the work, or deliver the work. In short, no license existed. The word "license" with respect to the purported verbal license is not entitled to any presumption of truth because Plaintiffs own allegations contradict the requirements to create an

facie case of *direct* copyright infringement requires a showing that (i) Plaintiffs own a valid copyright in the work(s) and (ii) Defendants copied protected elements from the work(s). *Feist Publ'ns Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). *Indirect* infringement may also result in liability for copyright infringement. Indirect infringers may be responsible for the actions of direct infringers on a theory of contributory or vicarious infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913, 930, 125S. Ct. 2764, 162 L. Ed. 2d 781 (2005). "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it[.]" *Id.* (citations omitted). Both doctrines "emerged from common law principles and are well established in the law." *Id.*

Plaintiffs attempt, but fail to allege, that the Foundation is liable for indirect copyright infringement on the basis that the Foundation allegedly directed or somehow controlled the alleged infringement of SCC. The primary issue with Plaintiffs indirect copyright infringement claim is that "[s]econdary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *A&M Records v. Napster, Inc.,* 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) (citing *Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc.,* 907 F. Supp. 1361, 1371 (N.D. Cal. 1995). Simply, Plaintiffs cannot state a claim for indirect copyright infringement in the absence of allegations sufficient to state a claim of direct infringement by a third party. The Amended Complaint fails to state facts sufficient to state a claim of direct infringement by any party. Plaintiffs failed to allege that original elements of

---

implied license. In addition, the terms of the license are not described in the Amended Complaint. Only one photograph, the "Chaser Photo" was registered with the Copyright Office, *effective June 29, 2025*–approximately five years after SCC began using the marks. (ECF No. 17, 34-36, 72.)

10

Plaintiffs' work were copied by a third-party or copied when a photograph of Chaser was copyrighted. Instead, Plaintiffs alleged vaguely that "images, logos and mascot designs" were "created from" or "derived from" a single photograph of Chaser owned by Plaintiff Bianchi. (ECF 17 ¶ 34). Plaintiffs do not identify an original element that SCC copied. Plaintiffs' omission is fatal to a claim for direct copyright infringement.

Further, Plaintiffs admit that the photographs were of a live animal. (ECF 17 ¶34). The fact that the subject matter of the alleged photograph was a live animal is also fatal to a claim of direct copyright infringement because copyright protection for works depicting live animals "protects against only virtually identical copying." *Satava v. Lowry*, 323 F. 3d 805, 812 (9th Cir. 2003). Indeed, SCC's marks use a highly stylized, cartoonish dog that is not identifiable as any specific dog.

As direct copyright infringement is a prerequisite to a claim for indirect copyright infringement, the Amended Complaint fails to allege facts sufficient to state a claim for indirect copyright infringement and should be dismissed.

### (a) Plaintiffs Did Not Allege a Basis for Contributory or Vicarious Liability Because the Foundation Did Not Know of or Cause Any Infringement

To plead contributory infringement, a plaintiff must allege that the defendant knew of the underlying direct infringement and materially contributed to it. *Ellison v. Robertson,* 357 F. 3d 1072, 1078 (9th Cir. 2004). Plaintiffs attempt, but fail, to allege legal conclusions to plead contributory infringement. The Amended Complaint is devoid of facts that would give notice, under Rule 8, to the Foundation of how the Foundation would have known of the underlying direct infringement or materially contributed to it. The Amended Complaint does not even allege that the Foundation was aware of any infringement other than in vague, conclusory allegations

that should be disregarded. Plaintiffs failed to identify how the Foundation would have materially contributed to any infringement. The Amended Complaint does not describe the relationship between SCC and the Foundation, except, at best, in unsupported legal conclusions.

Given the lack of concrete facts in the Amended Complaint regarding the Foundation, it is notable that courts have emphasized that merely providing support or services that an unrelated wrongdoer happens to use does not constitute "material contribution" without a direct nexus to the infringement. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788 (9th Cir. 2007). Except for bare legal conclusions, the Amended Complaint contains no allegation that the Foundation had a direct nexus to SCC's alleged infringement. Accordingly, the Court should dismiss the contributory infringement claim against the Foundation.

### (b) Plaintiffs Failed to Allege the Foundation Had a Financial Interest in the Alleged Copyrighted Materials

"[T]o establish vicarious liability, a copyright owner must demonstrate that the entity to be held so liable: (1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial interest in the exploited copyrighted materials." *Oppenheimer v. Scarafile*, No. 2:19-cv-3590-BHH, 2020 WL 710864, at *4 (D.S.C. Nov. 16, 2020) at *11 (D.S.C. Nov. 16, 2020) (emphasis added). *See also A&M Records, Inc. v. Napster*, 239 F.3d 1004, 1022 (9th Cir. 2001). Similarly, "to adequately plead a claim for contributory copyright infringement a plaintiff must show (1) there is direct infringement, and (2) the alleged contributory infringer induced, caused, or materially contributed to the direct infringement." *Oppenheimer v. Scarafile*, No. 2:19-CV-3590-BHH, 2020 WL 6710864, at *5 (D.S.C. Nov. 16, 2020).

"[T]he crux of the financial benefit inquiry is whether a causal relationship exists between the infringing activity and a financial benefit to the defendant." *Sony Music Ent. v. Cox*

12

*Commc'ns, Inc.*, 93 F.4th 222, 226 (4th Cir. 2024)*, cert. granted*, 145 S. Ct. 2841, 222 L. Ed. 2d 1128 (2025), and *cert. denied*, 145 S. Ct. 2844, 222 L. Ed. 2d 1130 (2025). Furthermore, "the financial benefit to the defendant must flow directly from the third party's acts of infringement to establish vicarious liability." *Id*. at 232. *See also Sony Music Entertainment v. Cox Communications, Inc*. (4th Cir. 2024). However, Plaintiffs made only bare assertions and conclusions that the Foundation profited from the infringement. Plaintiffs' claims are untethered to facts alleged in the Amended Complaint. Of note, Plaintiffs do acknowledge in the Amended Complaint that the Foundation is a "non-profit." Plaintiffs fail to explain how a "non-profit" would or could profit from infringement. Plaintiffs have failed to allege facts sufficient to establish that the Foundation had a direct financial interest in any alleged copyright infringement.

### (ii)     The Court Should Dismiss the False Designation of Origin Cause of Action

The Lanham Act claim against the Foundation under 15 U.S.C. § 1125(a) for False Designation of Origin is fundamentally flawed because Plaintiffs failed to allege facts to support the claim. "To prevail on … false designation of origin … claims, a plaintiff must establish that: (1) their marks are valid and legally protectable; (2) they own the marks; and (3) defendants' use of their marks to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Medieval Times U.S.A., Inc. v. Medieval Times Performers United*, 695 F. Supp. 3d 593, 599 (D.N.J. 2023). In addition, the defendant must use the mark "in commerce." *Id*. In this case, the third element is dispositive. Plaintiffs failed to allege that the Foundation advertised, marketed, or sold any product or service using the "Chaser" mark. Plaintiffs failed to allege the Foundation used Plaintiffs' marks. As the Amended Complaint did not allege that the Foundation used Plaintiffs' marks and did not allege that the Foundation used the marks in commerce, Plaintiffs could not (and did not) allege likelihood of confusion concerning the origin

13

of the goods or services. Plaintiffs simply failed to state a claim against the Foundation. The Amended Complaint does not even contain a bare recitation of the elements entitling them to relief. Accordingly, the claim for False Designation of Origin under 15 U.S.C. § 1125(a) must be dismissed.

> **(iii)     The Court Should Dismiss the Common Law**
> **Trademark Infringement Cause of Action**

Plaintiffs' cause of action for common law trademark infringement must be dismissed. As an initial matter, federal district courts in South Carolina have consistently held that the elements of common law unfair competition and trademark infringement under South Carolina law are identical to the elements for a Lanham Act claim. *Low Tide Brewing, LLC v. Tideland Management LLC*, No. 2:21-CV-0775-DCN, 2021 WL 1381123, at *1 (D.S.C. Apr. 12, 2021) ("the elements of common law unfair competition and trademark infringement under South Carolina law are identical to the elements for proving a Lanham Act claim federal trademark infringement law applies with equal force to common law infringement"). *See also Monster Daddy, LLC v. Monster Cable Prods., Inc.*, No. CIV.A. 6:10-1170-MGL, 2013 WL 3337828, at *1 (D.S.C. July 2, 2013) ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition. Plaintiff's state law claims rise and fall with the federal claims.") (internal citations and quotations omitted).

Because the common law trademark infringement claim is analyzed as a federal trademark infringement claim, and the federal infringement claim in this case failed, the state law claim must also fail. The same legal conclusions and vague allegations used to support the federal trademark claim are used to support the state law claim. However, Plaintiffs inconsistently – and without a single allegation to support the claim against the Foundation – allege "common law infringement." Plaintiffs do not distinguish between direct and indirect

14

infringement. However, this claim fares no better. Plaintiffs' federal indirect infringement claim failed because Plaintiffs could not establish a claim for direct infringement. The allegations in the third cause of action do not change the analysis at all. The common law trademark infringement claim should be dismissed. Alternatively, the Court should decline supplemental jurisdiction over it.

## CONCLUSION

For the foregoing reasons, the Defendant Spartanburg Community College Foundation, Inc requests that the Court dismiss the Amended Complaint with prejudice.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By      */s/ Peter G. Siachos*
Peter G. Siachos (Fed. ID 07591)
E-mail: psiachos@grsm.com
Kerry K. Jardine (Fed. ID 11921)
E-mail: kjardine@grsm.com
Morgan L. Casper (Fed. ID 14666)
E-mail: mcasper@grsm.com
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 278-5900
*Attorneys for Defendant Spartanburg Community College Foundation, Inc.*

Dated: February 6, 2026
Charleston, South Carolina

15